**Helen CHASTAIN, Widow of Donald Chastain, Petitioner,**

v.

**FREEMAN UNITED COAL MINING COMPANY and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 88–3381.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 19, 1989.

Decided Dec. 6, 1990.

**486**

Harold B. Culley, Jr., Raleigh, Ill., for petitioner.

Louis R. Hegeman, Louis D. Bernstein, Gould & Ratner, Chicago, Ill., for Freeman United Coal Mining Co., respondent.

Barbara J. Johnson, Patricia M. Nece, Appellate Litigation, Donald S. Shire, Sol. Gen., Office of the Sol., Washington, D.C., John H. Secaras, Sol. Gen., Dept. of Labor, Chicago, Ill., for Office of Workers' Compensation Programs.

Carla Chapman, Benefits Review Bd., Dept. of Labor, Washington, D.C., for Benefits Review Bd.

Before CUDAHY, FLAUM, and RIPPLE, Circuit Judges.

CUDAHY, Circuit Judge.

Donald F. Chastain filed a Part C claim for benefits under the Black Lung Benefits Act (the "Act"), as amended 30 U.S.C. § 901 *et seq.* Prior to the hearing on his claim, Donald Chastain died and his wife pursued his claim in order to receive survivor's benefits. The Administrative Law Judge ("ALJ") found that invocation had been established under 20 C.F.R. § 727.203(a)(3) & (4), which entitled Chastain[1] to a presumption that he was totally disabled due to pneumoconiosis arising out of coal mine employment. 20 C.F.R. § 727.203(a). However, the ALJ found that the employer, Freeman United Coal Mining Company ("Freeman"), had rebutted that presumption under § 727.203(b)(4), and the claim was denied. The Benefits Review Board (the "BRB") affirmed the ALJ's decision, and the *en banc* BRB affirmed on reconsideration. Helen Chastain appealed, and we now reverse.

## I. STATEMENT OF THE CASE

### A. Facts

The ALJ found, and respondents do not contest, that Donald Chastain was a coal miner within the meaning of the Act for twenty years and eleven months. Because Chastain had more than ten years of qualifying employment and his claim for benefits was filed prior to March 31, 1980, the claim was reviewed under 20 C.F.R. § 727.203. Under that section, an interim presumption that a miner is entitled to benefits can be invoked through: (1) x-ray, autopsy or biopsy evidence establishing pneumoconiosis; (2) ventilatory studies establishing the presence of a chronic pulmonary disease; (3) blood gas studies demonstrating an impairment in the transfer of oxygen; (4) other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishing the presence of a totally disabling respiratory or pulmonary impairment; or (5) in the case of a deceased miner where no medical evidence is available, by affidavit of the survivor or a person with knowledge. The ALJ found that invocation had been established under (a)(3) and (a)(4),[2] which entitled Chastain to a presumption that he was totally disabled due to pneumoconiosis arising out of his coal mine employment. 20 C.F.R. § 727.203(a). The propriety of invocation under (a)(3) and (a)(4) is not challenged on appeal.

---

1. "Chastain" may refer either to Donald Chastain or to Helen Chastain, his wife, as the context suggests.

2. All references, unless otherwise indicated, are to provisions under 20 C.F.R. § 727.203.

Invocation having been established, the ALJ proceeded to consider whether Freeman was able to rebut the presumption of entitlement to benefits. Under § 727.203(b), rebuttal is accomplished if evidence establishes that: (1) the miner is in fact doing his usual coal mine work or comparable work; (2) the miner is able to do such work; (3) the total disability or death did not arise in whole or in part from coal mine employment; or (4) the miner does not in fact have pneumoconiosis. The ALJ found that rebuttal was not established under (b)(1) or (2) because Chastain was not doing his usual coal mine work or comparable work before his death and because the evidence demonstrated that Chastain was totally disabled before his death. In addition, Freeman failed to establish, pursuant to (b)(3), that the total disability did not arise at least in part from coal mine employment.

In the (b)(3) analysis, the ALJ focused upon the medical report of Dr. McDonald, a pulmonary specialist. Doctors Thornburg and Sanjabi had indicated that Chastain's condition was, or could be, related to coal dust exposure. Dr. McDonald, however, declared that the chronic obstructive lung disease was fully attributable to Chastain's history of cigarette smoking.[3] The ALJ noted that the BRB in *Blevins v. Peabody Coal Co.*, 6 Black L.Rep. 1–750 (1983) (*"Blevins III"*), has established guidelines for assessing the weight of a physician's opinion attributing a miner's lung disease to smoking.[4] Based on those considerations, the ALJ found that Dr. McDonald's opinion was insufficient to establish rebuttal under (b)(3). That same report by Dr. McDonald, however, was then used by the ALJ to find that Freeman had established the absence of pneumoconiosis under (b)(4). The ALJ gave credence under (b)(4) to Dr. McDonald's determination that Chastain did not have pneumoconiosis, and that Chastain's smoking rather than coal mine employment caused his illness. Because rebuttal was accomplished under (b)(4), the claim for benefits was denied. That finding was upheld by the BRB on review and on *en banc* reconsideration. In both opinions, the BRB concluded that (b)(3) and (b)(4) provided independent means of rebuttal and that evidence deemed insufficient under (b)(3) could nevertheless establish rebuttal under (b)(4).

## B. Arguments on Appeal

On appeal, Helen Chastain asserts that the ALJ erred in finding (b)(4) rebuttal and that the denial of the claim therefore was contrary to law, irrational and unsupported by substantial evidence. In developing this argument, Chastain focuses upon the distinction between "clinical" and "statutory" pneumoconiosis.[5] In addition to including coal workers' pneumoconiosis and other enumerated diseases, the statutory definition includes any chronic respiratory or pulmonary disease arising out of coal mine

---

3. Dr. McDonald based his opinion on Chastain's history of smoking two packs a day from age 14, or 1944, until 1981. The ALJ found that Chastain smoked two packs of cigarettes a day from age 14 until he quit at age 53, or 1983.

4. The medical expert is required to:

   1) explain whether it is possible to distinguish between pulmonary disability caused by smoking and that caused by coal dust exposure with any degree of medical certainty;
   2) explain whether there are sufficient facts to permit a distinction to be made in a particular case;
   3) state his opinion as to the origin of claimant's pulmonary disability;
   4) explain how the evidence of record supports his conclusion.

*Blevins III*, 6 Black L.Rep. at 1–755, *citing Blevins v. Peabody Coal Co.*, 1 Black L.Rep. 1–1023, 1–1029 (1979) (*"Blevins II"*).

The "reasonable degree of medical certainty" standard was rejected by this court in favor of a "reasoned medical judgment" standard in *Underhill v. Peabody Coal Co.*, 687 F.2d 217 (7th Cir.1982). *See also Peabody Coal Co. v. Lowis*, 708 F.2d 266 (7th Cir.1983). In *Blevins III*, the BRB adopted our position, and overruled *Blevins II* to the extent that it required a reasonable degree of medical certainty. *Blevins III*, 6 Black L.Rep. at 1–756. The critical references to *Blevins III* contained in *Peabody Coal Co. v. Helms*, 859 F.2d 486 (7th Cir.1988), seemingly refer to *Blevins II* rather than *Blevins III*, and do not reflect the holding in *Blevins III*.

5. We recognized this distinction in *Peabody Coal v. Lowis*, 708 F.2d 266, 268 n. 4 (7th Cir.1983).

employment.[6] According to Chastain, (b)(4) rebuttal that "the miner does not, or did not, have pneumoconiosis" is effective only as regards "clinical" pneumoconiosis; however, the medical reports used in this case to establish invocation under (a)(3) and (a)(4) established statutory, not clinical, pneumoconiosis. Therefore, Chastain contends that Freeman's (b)(4) rebuttal was ineffective, and because neither (b)(2) nor (b)(3) rebuttal was established, benefits should have been granted. Finally, Chastain maintains that even if (b)(4) is applicable to statutory pneumoconiosis, Dr. McDonald's statements were insufficient to negate statutory pneumoconiosis.

In response, Freeman emphasizes that (b)(3) and (b)(4) are mutually exclusive rebuttal provisions, and that failure to satisfy (b)(3) cannot preclude recourse to (b)(4) rebuttal. Freeman reasons that (b)(3) was not satisfied because McDonald's statements attributing the disability to smoking did not satisfy the "evidentiary foundation guidelines" set forth in *Blevins III*. Freeman then asserts that the *Blevins III* guidelines are inapplicable to (b)(4) rebuttal and, therefore, rebuttal was properly found under (b)(4).

## II. ANALYSIS

### A. Rebuttal under (b)(4) Includes Statutory Pneumoconiosis

■ Chastain's assertion that (b)(4) applies only to cases of clinical pneumoconiosis is contradicted by several decisions construing that subsection. For instance, in *Shonborn v. Director, OWCP*, 8 Black L.Rep. 1–434, 1–436 (1986), the BRB held that "to rebut the interim presumption under subsection (b)(4), the party opposing entitlement must establish not only the absence of 'clinical' pneumoconiosis as defined by the medical community ... but

also the absence of 'statutory' pneumoconiosis as defined in the Act and regulations." *Accord Pavesi v. Director, OWCP*, 758 F.2d 956, 965 (3d Cir.1985). The *Shonborn* holding is also implicit in decisions that analyze whether evidence negates the existence of a chronic respiratory impairment. *See, e.g., Conn v. White Deer Coal Co.*, 862 F.2d 591 (6th Cir.1988). Finally, restriction of (b)(4) rebuttal to clinical pneumoconiosis would imply the absence of any provision for rebutting the presumption of respiratory disease (statutory pneumoconiosis) arising from coal mine employment. Miners could then invoke a presumption based upon statutory pneumoconiosis, but employers would have no established means of rebutting such a presumption with other evidence. The resulting "irrebuttable" presumption would frustrate the purpose of the Act and might be unconstitutional. *See Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135, 159 n. 32, 108 S.Ct. 427, 440 n. 32, 98 L.Ed.2d 450 (1987). Chastain is unable to identify any decision interpreting (b)(4) in such a restrictive manner, and we hold that (b)(4) can properly be used to rebut a presumption of statutory pneumoconiosis.

### B. Rebuttal of Statutory Pneumoconiosis under (b)(4)

■ The relevant issue, then, is whether in the circumstances of this case, the ALJ properly found (b)(4) rebuttal. As indicated, the medical reports used to invoke the interim presumption pointed to statutory pneumoconiosis. Therefore, to rebut under (b)(4), Freeman had to establish that Chastain did not have a chronic pulmonary or respiratory disease arising out of coal mine employment. By its terms, statutory pneumoconiosis could be negated either by a showing that Chastain experienced no chronic pulmonary or respiratory disease or by demonstrating that the disease did not

---

**6.** Pneumoconiosis is defined in 20 C.F.R. § 727.202 as follows:

> For the purpose of the act, "pneumoconiosis" means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. This definition includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicos, anthrocosisanthro-silicosis,

massive pulmonary fibrosis, progressive massive fibrosis silicosis, or silicotuberculosis arising out of coal mine employment. For purposes of this definition, a disease "arising out of coal mine employment" includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or aggravated by, dust exposure in coal mine employment.

arise out of coal mine employment. *See Underhill v. Peabody Coal Co.*, 687 F.2d 217, 223 (7th Cir.1982). *See also Adams v. Director, OWCP*, 886 F.2d 818, 823 n. 5 (6th Cir.1989); *Kline v. Director, OWCP*, 877 F.2d 1175, 1177–79 (3d Cir.1989). These alternative means of (b)(4) rebuttal will be discussed separately.

### 1. Existence of a Chronic Pulmonary or Respiratory Disease

■ First, a coal mine employer could under (b)(4) attempt to negate the existence of a pulmonary or respiratory disease. In this connection, the statements of the ALJ supporting such rebuttal under (b)(4) are ambiguous, and therefore the basis for such a finding is not clear. At one point, the ALJ declares that "Dr. McDonald stated unequivocally that he found no evidence of pneumoconiosis." A review of Dr. McDonald's report, however, indicates that Dr. McDonald found "no evidence of coal workers' pneumoconiosis," but did find that Chastain suffered from severe chronic obstructive pulmonary disease to the point of total and permanent disability. Because Dr. McDonald did not refute the existence of a chronic respiratory or pulmonary disease, his report fails to negate this aspect of statutory pneumoconiosis.

In any event, and as a matter of law, Dr. McDonald's report could not be used to rebut the (a)(4) finding of a totally disabling respiratory disease. In *Mullins*, 484 U.S. 135, 108 S.Ct. 427, the Supreme Court held that to invoke the interim presumption, at least one of the five presumption categories (20 C.F.R. § 727.203(a)(1)—(5)) must be established by a preponderance of the evidence.[7] *See Conn*, 862 F.2d at 594 n. 3. The Court also held, however, that an ultimate fact established at invocation could be rebutted only by evidence different in kind from that used to establish invocation. *See Mullins*, 484 U.S. at 150–

51 n. 26, 108 S.Ct. at 435–36 n. 26. In the present case, the ALJ weighed the medical reports and determined that they established a totally disabling respiratory impairment under (a)(4). In these circumstances, *Mullins* precludes the ALJ from relying upon these same medical reports to rebut the existence of the respiratory impairment under (b)(4).[8]

### 2. Arising Out of Coal Mine Employment

■ The second means of establishing (b)(4) rebuttal in a case involving statutory pneumoconiosis is by demonstrating that the respiratory impairment did not arise out of coal mine employment. This line of proof focuses on the causal relationship between the respiratory impairment and coal mine employment and therefore is similar to (b)(3) rebuttal. In fact, the ALJ in this case conducted almost the same analysis to *find* (b)(4) rebuttal as he had undertaken to *reject* (b)(3) rebuttal.

In rejecting rebuttal under (b)(3), the ALJ found that Dr. McDonald's statements attributing the lung disease to smoking were insufficient under *Blevins III* to show that Chastain's disability did not arise from coal mine employment. That same report by Dr. McDonald, however, was used by the ALJ to find that Freeman had established the absence of pneumoconiosis under (b)(4). The ALJ gave dispositive weight under (b)(4) to Dr. McDonald's determination that smoking rather than coal mine employment caused Chastain's illness and therefore found that Chastain did not have pneumoconiosis.

Those differing conclusions under (b)(3) and (b)(4) are inconsistent because the elements compared under (b)(3) and (b)(4) in this case are essentially identical. Under (b)(3), the issue is whether the *disability* was caused in part by coal mine employ-

---

**7.** The *Mullins* Court rejected the view that a single item of qualifying evidence is always sufficient to invoke the interim presumption regardless of contrary evidence. *See* 484 U.S. at 147–52, 108 S.Ct. at 433–36.

**8.** The finding of a chronic respiratory impairment could properly have been rebutted through evidence not relied upon under (a)(3) or (a)(4), such as x-rays or ventilatory studies.

*See, e.g., Conn*, 862 F.2d at 596–97. No such evidence was considered by the ALJ in finding rebuttal under (b)(4). In addition, because (a)(4) does not address the ultimate fact of causation, the ALJ could properly weigh the medical reports on rebuttal of causation. *Mullins*, 484 U.S. at 150–51 n. 26, 108 S.Ct. at 435–36 n. 26.

ment, while (b)(4) addresses whether the *respiratory* or *pulmonary impairment* arose from coal mine employment.[9] These nominal differences are meaningless in this case because Chastain suffered from a totally disabling respiratory impairment as established under (a)(4). Because the respiratory impairment and the total disability are indistinguishable, the elements compared under (b)(3) and (b)(4) are the same.

The BRB upheld the ALJ's decision by emphasizing that (b)(3) and (b)(4) are independent means of rebuttal and by applying a more lenient standard for evidence under (b)(4). The essence of the BRB's argument, and the apparent basis for the ALJ's determination, is that *Blevins III* imposes evidentiary foundation requirements for (b)(3) rebuttal that are inapplicable to rebuttal under other subsections such as (b)(4), and therefore evidence insufficient to meet the (b)(3) standard could satisfy (b)(4). This is an incorrect interpretation of *Blevins III* and is inconsistent with the purposes of the Act.

Specifically, *Blevins III* should not be read as imposing an evidentiary burden applicable only to (b)(3). The BRB in *Blevins III* acknowledged that a physician's report need only constitute a "reasoned medical judgment" in order to be considered by the ALJ. 6 Black L.Rep. at 1–756, *citing Peabody Coal v. Lowis*, 708 F.2d 266 (7th Cir.1983). That standard applies to all rebuttal provisions equally, *Underhill v. Peabody Coal Co.*, 687 F.2d 217 (7th Cir.1982), and therefore the standard of a reasoned medical judgment is applicable to both (b)(3) and (b)(4) rebuttal.

The fourfold criteria of *Blevins III* merely provide a means of determining whether an opinion attributing a pulmonary disability to smoking can be considered a reasoned medical judgment. *See Blevins III*, 6 Black L.Rep. at 1–754. In fact, the purpose of the criteria is "to prevent rebuttal on the basis of medical opinions which are speculative and equivocal." *Blevins III*, 6 Black L.Rep. at 1–755. The principle is well-established that a physician's report must be viewed in light of the studies and objective indications upon which the medical opinion is based, and that mere speculation may not establish rebuttal. *See e.g., Logsdon v. Director, OWCP*, 853 F.2d 613, 615 (8th Cir.1988); *Amax Coal v. Director, OWCP*, 801 F.2d 958, 963 (7th Cir.1986). The *Blevins* criteria merely clarify these more general requirements by listing specifically some of the factors relevant to that assessment. *See Shonborn*, 8 Black L.Rep. at 1–435 n. 1. Because the ALJ essentially found that Dr. McDonald's opinion did not constitute a reasoned medical judgment regarding causation under (b)(3), that report could not satisfy the same standard under (b)(4).[10]

Reversal of the ALJ's determination in this case will preserve the independent viability of (b)(3) rebuttal. Under the ALJ's analysis here, (b)(4) rebuttal could be predicated upon evidence that would be insufficient to accomplish rebuttal under (b)(3). As a result, a coal mine employer could, without relying on (b)(3), have recourse to (b)(4) rebuttal to disprove causation. At least in cases in which the respiratory im-

---

**9.** An impairment arises out of coal mine employment for purposes of (b)(4) rebuttal if the impairment is "significantly related to, or aggravated by, dust exposure in coal mine employment." *See* 20 C.F.R. § 727.202. This standard may be stricter than the (b)(3) requirement that a disability arise "in part" from coal mine employment. That potential difference, however, is irrelevant in this case because, as we will discuss, the issue is whether Dr. McDonald's opinion attributing the disease to smoking constituted a reasoned medical judgment for purposes of these causal analyses. The strictness of the causal analysis under the rebuttal provisions does not affect the underlying question whether the opinion is a reasoned medical judgment with respect to the issue of causation.

**10.** This conclusion would not follow if the respiratory impairment were not the basis for the total disability. In such a case, the causal analysis under (b)(3) linking *disability* to coal mine employment would presumably not be the same as the analysis under (b)(4) linking *impairment* to coal mine employment. In cases applying the *Blevins* criteria, however, the causal analysis will always focus on whether a respiratory disability is wholly attributable to smoking. In such cases, the determination whether evidence is a reasoned medical judgment will be the same under (b)(3) and (b)(4).

pairment and the total disability are coterminous, and in fact indistinguishable,[11] (b)(3) rebuttal could be entirely subsumed under a looser framework of (b)(4) rebuttal. The relegation of the causality issue to (b)(4) is quite inappropriate because (b)(3) is the provision explicitly designed to address causality. *See Mullins*, 484 U.S. at 150–51 n. 26, 108 S.Ct. at 435–36 n. 26. The issue of causality arises under (b)(4) only indirectly because of its relation to the definition of pneumoconiosis.

Therefore, the determination of the ALJ based on (b)(4) rebuttal must be reversed and benefits awarded to Helen Chastain. In view of this disposition, we need not address Chastain's alternative argument that the case must be remanded to the ALJ for a determination under Part 718 of the regulations.

REVERSED.

---

11. This would be the case when there is invocation under (a)(4), but at the same time, the employer does not call into question the relationship between the impairment and the disability.