**Dollie KEELING, widow of John E. Keeling, Petitioner,**

v.

**PEABODY COAL COMPANY, Old Republic Insurance Company and Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 92–1125.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 13, 1992.

Decided Jan. 28, 1993.

**858**

Harold B. Culley, Jr. (argued), Raleigh, IL, for Dollie Keeling.

Mark E. Solomons (argued), Laura M. Klaus, Arter & Hadden, Washington, DC, for Peabody Coal Co. and Old Republic Ins. Co.

Eileen M. McCarthy, Dept. of Labor, Appellate Litigation, Barbara J. Johnson, Donald S. Shire, Sol. Gen., Deborah E. Mayer (argued), Dept. of Labor, Office of the Solicitor, Louis W. Rogers, Dept. of Labor, Office of Workers' Compensation Program, Washington, DC, for Office of Workers' Compensation Program.

Linda M. Meekins, Ann McLaughlin, Benefits Review Bd., Dept. of Labor, Lisa L. Lahrman, Benefits Review Bd., Executive Counsel, Clerk of the Bd., Washington, DC, for Benefits Review Bd.

Before CUMMINGS and COFFEY, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

HARLINGTON WOOD, Jr., Senior Circuit Judge.

Fourteen years ago an Illinois miner named John Keeling applied for benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.* During the years, Keeling has seen both the Department of Labor and an Administrative Law Judge change their minds numerous times about whether Keeling is eligible for benefits. As the latest decision in this saga seems to embrace both positions, we remand this case in the hope of obtaining a clear and final answer.[1]

## I. BACKGROUND

The Black Lung Benefits Act ("Act") provides benefits "to coal miners who are totally disabled due to pneumoconiosis." 30 U.S.C. § 901. Pneumoconiosis is statutorily defined as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902. As the title of the Act would indicate, though, pneumoconiosis is better known as "black lung" disease.

### A. The Regulations

Under Department of Labor regulations, a miner with at least ten years employment "will be presumed to be totally disabled due to pneumoconiosis" if one of four medical conditions are met. 20 C.F.R. § 727.-

---

1. Unfortunately, John Keeling will not witness the resolution of this litigation. Mr. Keeling's death was recently suggested to us. We therefore granted the motion of Dollie Keeling, as a widow of John E. Keeling, to be substituted as petitioner. The caption of this case has been changed accordingly.

203(a). This "interim presumption" is invoked if: (1) an X–ray, biopsy, or autopsy establish the existence of pneumoconiosis; (2) ventilatory studies establish the presence of a chronic respiratory or pulmonary disease; (3) blood gas studies demonstrate the presence of an impairment in the transfer of oxygen from the lung alveoli to the blood; or (4) other medical evidence establishes the presence of a disabling respiratory or pulmonary impairment. *Id.* § 727.-203(a)(1)–(4).

Once the interim presumption of disability due to pneumoconiosis is established, it may be rebutted in one of four ways: (1) evidence establishes the individual is actually doing his usual coal mine work or comparable and gainful work; (2) the individual is able to do his usual coal mine work or comparable and gainful work; (3) evidence establishes that the total disability of the miner did not arise in whole or in part out of the coal mine employment; or (4) evidence establishes the miner does not have pneumoconiosis. *Id.* § 727.203(b)(1)–(4).

## B. The Department of Labor

The first chapter in this lengthy story started on August 29, 1978, when John Keeling filed his claim for benefits with the Department of Labor. Almost two years later, the Department notified Keeling that it had denied his claim based on its conclusion that Keeling was not totally disabled. A few months thereafter, on November 5, 1980, the Department concluded Keeling might be entitled to receive benefits, and thus issued a Notice of Initial Finding of Eligibility.

On December 9, 1980, Keeling's employer, Peabody Coal Company, controverted Keeling's claim and submitted evidence in support of its position that Keeling was not totally disabled due to pneumoconiosis. Upon considering Peabody's evidence, the Department reversed its initial finding on July 20, 1981, thus adopting its original stance that Keeling was ineligible for benefits.

## C. The ALJ's Initial Decision

Three years after first applying to the Department of Labor for benefits, Keeling requested a formal hearing before an Administrative Law Judge ("ALJ"). Several hearing dates were scheduled, but then continued at the request of both parties, and the hearing did not occur until March 26, 1985—six-and-a-half years after Keeling initially filed for benefits.

On November 5, 1985, the ALJ issued his Decision and Order awarding benefits to Keeling. The ALJ initially found Keeling was a coal miner with at least twenty years of qualifying coal mine employment. The ALJ then considered whether Keeling met any of the four medical conditions enumerated in 20 C.F.R. section 727.203(a)(1)–(4) that would entitle him to the presumption of disability. The ALJ found that numerous X–rays taken over a six-year period did not reveal evidence of pneumoconiosis, thus Keeling was not entitled to the presumption under section (a)(1). Nor was Keeling entitled to the presumption based on blood gas studies under section (a)(3). Keeling, however, was entitled to the presumption of disability based on ventilatory studies pursuant to section (a)(2). The ALJ also found Keeling entitled to the presumption under the authority of section (a)(4).

That section, as previously indicated, allows a presumption of disability to be found when "[o]ther medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment." 20 C.F.R. § 727.203(a)(4). In finding Keeling to be disabled under this section, the ALJ gave great weight to the opinion of Keeling's treating physician, Dr. Pramote Anantachai. Dr. Anantachai, who is board-certified in internal medicine, had treated Keeling since 1978 and consistently found Keeling to be totally disabled due to chronic obstructive lung disease from coal dust exposure. The ALJ found that Dr. Anantachai based his opinion "on frequent physical examinations, X–rays, blood gas studies, and pulmonary function studies."

The doctor's opinion conflicted, though, with that of Drs. Peter G. Tuteur and William H. Anderson. At Peabody's request, Dr. Tuteur had examined Keeling once and reviewed his record several times. Each time, Dr. Tuteur concluded that Keeling showed no evidence of coal workers' pneumoconiosis. The ALJ found Dr. Tuteur's opinion less credible than Dr. Anantachai as Dr. Tuteur had only examined Keeling once, was no more qualified than Dr. Anantachai, and had rendered an "equivocal" opinion as to Keeling's disability. The ALJ also dismissed Dr. Anderson's opinion that Keeling was not disabled and could perform coal employment or similar work. Dr. Anderson, noted the ALJ, based his conclusion on the result of a single pulmonary function study and had never examined Keeling.

In examining the possibility of rebuttal, the ALJ found that section (b)(1) was not available, as no one contested the fact that Keeling was not in fact doing his usual coal mine work or comparable and gainful work. Whether section (b)(2) was applicable was contested. That section provides a rebuttal to the presumption of disability if the claimant is able to perform his usual coal mine work or comparable and gainful work. In discussing this section, the ALJ noted that Drs. Tuteur, Anderson, and Anantachai differed as to the extent or existence of Keeling's disability. Here again the ALJ gave greater weight to Dr. Anantachai's opinion that Keeling was totally disabled. The ALJ also noted that Peabody presented no evidence to the contrary. Thus the ALJ found there to be no rebuttal under section (b)(2).

With little discussion, the ALJ also found there was no rebuttal under sections (b)(3) or (b)(4). The first of those sections provides rebuttal if the "evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment." 20 C.F.R. § 727.203(b)(3). The ALJ found that Dr. Anantachai unequivocally stated that pneumoconiosis was the cause of Keeling's disability while Dr. Tuteur "said in effect that it was possible for this miner, given his work history, to have contracted pneumoconiosis."

Regarding section (b)(4), which allows rebuttal if "[t]he evidence establishes that the miner does not, or did not, have pneumoconiosis," the ALJ found this also to be inapplicable. The ALJ noted that "the weight of the medical opinions ... establishes the presence of a totally disabling respiratory impairment." The ALJ, therefore, found none of the four rebuttal provisions to be applicable and ordered Peabody Coal Company to pay Keeling disability benefits.

### D. First Appeal to the Benefits Review Board

Peabody Coal Company appealed the decision to the Benefits Review Board ("Board"), alleging the ALJ erred in finding the evidence insufficient to establish rebuttal under sections 727.203(b)(2)–(4). On March 31, 1988, the Board affirmed the ALJ regarding section (b)(2), but vacated the ALJ's findings on the availability of rebuttal under sections (b)(3) and (b)(4).

In respect to section (b)(3), which deals with the causation of the miner's disability, the Board found the ALJ erred in characterizing Dr. Tuteur's opinion as equivocal. The Board noted that in his deposition, Dr. Tuteur specifically stated that Keeling did not have pneumoconiosis. The ALJ was also mistaken as to Dr. Tuteur's qualifications. Like Dr. Anantachai, Dr. Tuteur is board-certified in internal medicine. Unlike Dr. Anantachai, Dr. Tuteur is also board-certified in pulmonary medicine. In fact, the transcript of Dr. Tuteur's deposition included a copy of his curriculum vitae; this document reflected Dr. Tuteur's board certifications and his position as an Associate Professor at Washington University's School of Medicine in St. Louis, Missouri.

The Board found the ALJ also erroneously foreclosed rebuttal under section (b)(4), which deals with the existence of pneumoconiosis, and directed the judge on remand to consider all relevant evidence. Additionally, the Board instructed the ALJ to consider whether Keeling was eligible for benefits under 20 C.F.R. section 718.202 which

outlines an alternate method for finding the existence of pneumoconiosis. *See Strike v. Director, Office of Workers' Compensation Programs,* 817 F.2d 395, 406 n. 9 (7th Cir.1987) (where eligibility is not established under 20 C.F.R. § 727.203, claimants may attempt to establish eligibility under part 718).

### E. The ALJ's Second Opinion

On remand, the ALJ changed his position and on August 29, 1988, found that Keeling was not eligible for benefits. Specifically, the ALJ found rebuttal had been established under section (b)(4), which provides for rebuttal where the "evidence establishes that the miner does not … have pneumoconiosis." 20 C.F.R. § 727.203(b)(4).

The ALJ noted that Keeling's treating physician, Dr. Anantachi, "found that claimant suffered from chronic obstructive lung disease (COPD) caused by coal mine employment," and recognized that this disease "fits loosely into the definition of pneumoconiosis." Nonetheless, the ALJ chose to believe Dr. Tuteur who found Keeling did not suffer from pneumoconiosis. The ALJ also found Keeling ineligible under 20 C.F.R. section 718.202. In discussing this section, the ALJ noted Dr. Tuteur's "superior qualifications" and said he would "accord more weight to Dr. Tuteur's opinion than to that of Dr. Anantachai." As Dr. Tuteur "found no evidence of pneumoconiosis, I find that Claimant does not suffer from pneumoconiosis … [and] is not entitled to benefits under the Act and Regulations."

Curiously, the ALJ did not find rebuttal under section (b)(3), which would provide rebuttal if the "evidence establishes that the total disability … of the miner did not arise in whole or in part out of coal mine employment." 20 C.F.R. § 727.203(b)(3). The ALJ again noted Dr. Tuteur's superior qualifications, but chose under this section to believe Dr. Anantachi who had diagnosed Keeling as being disabled due to his coal mine employment.

Following this decision, Keeling motioned for a reconsideration of the remand order. Keeling argued that by failing to

find rebuttal under section (b)(3), the ALJ could not then find rebuttal under section (b)(4). The ALJ declared there was "no case law to substantiate Claimant's assertion" and denied the motion on April 14, 1989.

### F. Second Appeal to the Board

Keeling again appealed to the Board, arguing that the ALJ erred in finding evidence sufficient to establish rebuttal pursuant to section 727.203(b)(4). The Board rejected this argument, believing the ALJ had properly relied on Dr. Tuteur's opinion and the negative X–ray evidence.

Keeling also failed to convince the Board that it was improper for the ALJ to find no rebuttal under (b)(3) while at the same time finding rebuttal under (b)(4). The Board termed the ALJ's finding under (b)(3) to be "equivalent to concluding that employer has not established that pneumoconiosis was not a contributing cause of claimant's total disability." This, said the Board, "is not equivalent to making an affirmative finding that claimant is suffering from pneumoconiosis … and, thus, does not preclude section (b)(4) as a valid means of rebuttal."

Accordingly, on December 30, 1991, the Board affirmed the ALJ's decision. Keeling petitioned this court for review on January 17, 1992. As the petition was timely, we have jurisdiction pursuant to 33 U.S.C. § 921(c).

## II. STANDARD OF REVIEW

This court's task is to review the judgment of the ALJ, which was upheld by the Board. *Peabody Coal Co. v. Shonk,* 906 F.2d 264, 267 (7th Cir.1990). In our review, we evaluate whether the ALJ's decision is "rational, supported by substantial evidence, and consistent with applicable law." *Zettler v. Director, Office of Workers' Compensation Programs,* 886 F.2d 831, 834 (7th Cir.1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420,

1427, 28 L.Ed.2d 842 (1971) (citation omitted).

Our review necessarily encompasses the entire record, yet we neither decide the facts anew nor substitute our judgment for the ALJ's. *Zettler*, 886 F.2d at 834. Nonetheless, this court does review the ALJ's determinations on matters of law under a *de novo* standard. *Director, Office of Workers' Compensation Programs v. Midland Coal Co.*, 855 F.2d 509, 511 (7th Cir. 1988). "If the ALJ's decision passes muster, then the decision of the Board affirming the ALJ's determination likewise will be affirmed by this court." *Shonk*, 906 F.2d at 267.

III. ANALYSIS

■ Keeling sees two contradictions in the ALJ's latest decision. First, he notes that although the ALJ found there to be a presumption of disability under section (a)(4), the ALJ then rebutted that presumption pursuant to section (b)(4). Secondly, Keeling feels it is illogical for the ALJ to find no rebuttal in section (b)(3) but then to find grounds for rebuttal under section (b)(4). We will address each of these arguments.

A. Rebutting section (a)(4)

Section 727.203 specifically provides that the interim presumption of disability due to pneumoconiosis established under section (a) may be rebutted under section (b). Keeling does not dispute this, but contends that a presumption established under section (a)(4) cannot be rebutted by section (b)(4).

The regulation itself does not forbid rebutting the (a)(4) presumption by section (b)(4), but Keeling believes the case of *Chastain v. Freeman United Coal Mining Co.*, 919 F.2d 485 (7th Cir.1990), mandates this result. In *Chastain*, an ALJ found a coal miner entitled to the presumption, or "invocation," of disability under sections (a)(3) and (a)(4) but then found the employer had rebutted the presumption under section (b)(4).

The *Chastain* court found the ALJ had erred in finding rebuttal under (b)(4) for he had used the same medical reports to invoke the presumption under (a)(4) as he did to rebut the presumption. In other words, the ALJ considered the conflicting opinions of several doctors and then concluded under (a)(4) that this evidence established the presence in the miner of a totally disabling respiratory or pulmonary impairment. Thereafter, the ALJ took a second look at those same opinions and found under (b)(4) that the medical evidence established the miner did not have pneumoconiosis.

The court found the ALJ's ruling to be in error based on *Mullins Coal Co. v. Director, Office of Workers' Compensation Programs*, 484 U.S. 135, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987). We interpreted *Mullins* for the proposition that "an ultimate fact established at invocation could be rebutted only by evidence different in kind from that used to establish invocation." *Chastain*, 919 F.2d at 489. Contrary to Keeling's argument, this does not mean an invocation under (a)(4) cannot be rebutted under (b)(4); *Mullins* and *Chastain* simply limit the form rebuttal may take.

■ First, an invocation established under (a)(4) may be rebutted under (b)(4) with evidence "different in kind." In other words, the employer may introduce relevant evidence that was not offered at the presumption stage. In *Chastain* we gave an example of this, where we noted that "[t]he finding of a chronic respiratory impairment could properly have been rebutted [under section (b)(4)] through evidence not relied upon under (a)(3) or (a)(4), such as x-rays or ventilatory studies." 919 F.2d at 489 n. 8.

Secondly, an invocation established under (a)(4) may be rebutted under (b)(4) with the same evidence if the rebuttal is based on the *cause* of the miner's pneumoconiosis. To understand how this is possible it is necessary to recognize that the inquiries conducted under (a)(4) and (b)(4) are not identical. Looking again to the language of the regulation, a presumption of disability due to pneumoconiosis will be invoked under (a)(4) where medical evidence "establishes the presence of a totally disabling respiratory or pulmonary impairment." 20 C.F.R. § 727.203(a)(4). Section (b)(4) per-

mits rebuttal where the evidence "establishes the miner does not, or did not, have pneumoconiosis." *Id.* § 727.203(b)(4). At first glance these sections seem to focus on the same inquiry—does the miner have a totally disabling respiratory or pulmonary impairment? Pneumoconiosis, however, is more than just a totally disabling respiratory or pulmonary impairment.

For purposes of the Act, Congress has defined pneumoconiosis broadly as a "chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b). The Department's regulations elaborate that definition, stating that "a disease 'arising out of coal mine employment' includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 727.202.

■ Looking at these definitions, it is apparent that the statutory concept of pneumoconiosis encompasses both the *existence* of the disease and its *causation.* Rebuttal under section (b)(4), therefore, can be accomplished one of two ways. First, the employer may show that the miner does not suffer from a chronic respiratory or pulmonary impairment. Second, the employer can prove the miner's disease did not arise out of coal mine employment. *See Chastain,* 919 F.2d at 488–89.

The first method of rebuttal, as mentioned earlier, is foreclosed if the miner established the existence of the disease under (a)(4) and his employer does not under (b)(4) present " 'relevant evidence different in kind from that offered at the presumption stage.' " *Mullins,* 484 U.S. at 150 n. 26, 108 S.Ct. at 436 n. 26 (citation omitted). The second method, attacking the disease's causation, remains open even if there is no new evidence "different in kind." As we wrote in *Chastain,* "because (a)(4) does not address the ultimate fact of causation, the ALJ could properly weigh the [same] medical reports on rebuttal of causation." 919 F.2d at 489 n. 8.

In Keeling's case, the Board instructed the ALJ to take the second method and on remand to "consider all the relevant evidence ... in determining if claimant's respiratory disease was caused by coal mine employment." Contrary to Keeling's argument, this does not run afoul of *Chastain.*

**B.  Sections (b)(3) and (b)(4)**

■ In discussing the cause of Keeling's disability, the ALJ incongruously embraced both Dr. Anantachi's and Dr. Tuteur's opinions. As discussed above, after the presumption of disability is found under section (a)(4), the only avenue of rebuttal under section (b)(4) (absent relevant evidence different in kind) is to attack the causation of the miner's disease. This approach virtually duplicates that of section (b)(3), which allows rebuttal where the "evidence establishes that the total disability ... did not arise in whole or in part out of coal mine employment." 20 C.F.R. § 727.-203(b)(3).

In *Chastain,* this court faulted an ALJ for finding causation under (b)(4) but failing to find causation pursuant to (b)(3) when both findings were based on the same medical report. We have a similar situation here. On remand in this case, the ALJ was instructed to reconsider the cause of Keeling's disability. Despite Dr. Tuteur's well-qualified and unequivocal diagnosis, the ALJ found that there was no rebuttal under section (b)(3). This finding relied entirely on the ALJ's crediting Dr. Anantachi, who diagnosed Keeling as being disabled due to pneumoconiosis:

> Nevertheless, I still give greater weight to the opinion of Dr. Anantachi. At the time of the hearing, he had been Claimant's treating physician for seven years. He determined that Claimant's total disability was due to dust exposure during his coal mine employment. As I accord the treating physician's opinion more weight, I find that there is no rebuttal under subsection (b)(3).

Petitioner's Brief at A–23.

In considering rebuttal under (b)(4), however, the ALJ did an about-face. Based on Dr. Tuteur's opinion and negative X–rays, the ALJ found that Keeling did not suffer from pneumoconiosis:

> [B]ecause Dr. Tuteur is Board–certified in both internal medicine and pulmonary

diseases, I give greater weight to his opinion than to that of Dr. Anantachai. Dr. Tuteur had the opportunity both to examine Claimant and to review the results of a battery of objective tests and medical reports. Dr. Tuteur found that Claimant did not suffer from pneumoconiosis. On the basis of the x-ray evidence and Dr. Tuteur's well-reasoned and highly qualified opinion, I find that the interim presumption has been rebutted under subsection (b)(4).

Petitioner's Brief at A-24.

As we wrote in *Chastain*, "Those differing conclusions under (b)(3) and (b)(4) are inconsistent because the elements compared under (b)(3) and (b)(4) in this case are essentially identical." 919 F.2d at 489. In other words, the ALJ in this case has found Keeling's pneumoconiosis was caused by coal mine employment and also found that his pneumoconiosis was not caused by coal mine employment. This conclusion is neither rational, supported by substantial evidence, nor consistent with applicable law. We therefore reverse the ALJ's "Decision and Order Denying Benefits" and remand for further consideration of whether Peabody has rebutted the interim presumptions established under sections (a)(2) and (a)(4) in accordance with sections (b)(3) and (b)(4).

On remand, the ALJ must decide whose opinion is more credible—Dr. Anantachi's or Dr. Tuteur's. Given the care with which each doctor came to his conclusions, as a matter of law we cannot dictate the ALJ's choice. We do note, however, that if the ALJ assigns more weight to Dr. Tuteur's opinion, he must explain how that opinion is consistent with the (a)(4) finding that Keeling is totally disabled due to pneumoconiosis. Finally, we would recommend the ALJ give priority to Keeling's case.

## IV. CONCLUSION

For the foregoing reasons, the decision of the ALJ is

REVERSED AND REMANDED.

