43 F.3d 1474
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
LEMMONS & COMPANY, INCORPORATED, Petitioner,
v.
OFFICE OF WORKERS COMPENSATION PROGRAMS, Respondent.
 No. 94-2126.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 5, 1994.
Decided Jan. 4, 1995.
 
 Before BAUER, REAVLEY* and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Petitioner Lemmons & Company, Inc. seeks review of a final order rendered by the Benefits Review Board of the United States Department of Labor. The Board affirmed an award of benefits by an Administrative Law Judge to Jewell Madden, the widow of the original claimant Charles Madden, pursuant to the Black Lung Benefits Act, 30 U.S.C. Sec. 901 et seq. For the reasons stated below, we hold that the ALJ properly awarded benefits and deny the petition for review.
 
 
 2
 Charles Madden worked in coal mines for thirty years, all but three of which were spent in surface mines. His duties largely consisted of the operation and maintenance of a shovel, dragline, or stripping machine. Madden was hired by Lemmons in March 1974 and retired from Lemmons in March 1976 because he was totally disabled by chronic pulmonary lung disease. He filed this claim in 1978 alleging that his disability resulted from pneumoconiosis, commonly known as black lung disease. For a number of reasons, not the least of which were Lemmons' bankruptcy and Madden's death, no formal hearing was held in this matter until October 1991.[1] At this hearing, the parties adduced a substantial body of medical evidence relating to Charles Madden's condition, including an affidavit from Madden himself, by this time long deceased.
 
 
 3
 The ALJ determined that Madden was entitled to an interim presumption that he was disabled by pneumoconiosis pursuant to 20 C.F.R. Sec. 727.203(a)(2) because Madden was employed as a coal miner for at least ten years and ventilatory studies performed on Madden established the presence of chronic pulmonary disease. In addition, the ALJ found that Lemmons had failed to rebut this interim presumption under either 20 C.F.R. Secs. 727.203(b)(3) or (b)(4), because it could prove neither that Madden's disability did not arise from coal mine employment nor that Madden did not have pneumoconiosis. The ALJ therefore found Madden entitled to black lung benefits.
 
 
 4
 We review this award of benefits in the same way that the Benefits Review Board did; that is, we must determine whether the ALJ's decision is supported by substantial evidence, is in accord with the law, and is rational. Freeman United Coal Mining Co. v. OWCP, 988 F.2d 706, 709 (7th Cir.1993), rev'd on other grounds, 114 S.Ct. 2732 (1994). Lemmons challenges the ALJ's decision on two grounds. First, it claims that the ALJ improperly invoked the interim presumption by relying on the "true doubt" rule. The true doubt rule, traditionally applicable to the determination of whether the interim presumption has been established pursuant to Secs. 727.203(a)(1) and (b)(4), is a means of breaking evidentiary gridlock in black lung cases where equally probative evidence has been adduced by both parties; the rationale for the rule is that it effectuates the congressional intent of giving the benefit of the doubt to the coal miner. Freeman United Coal, 988 F.2d at 710. The true doubt rule, however, has been invalidated by the Supreme Court in OWCP v. Greenwich Collieries, 114 S.Ct. 2251 (1994), because it is contrary to Sec. 7(c) of the Administrative Procedure Act, 5 U.S.C. Sec. 556(d). Second, Lemmons claims that the ALJ erred when it held that Lemmons had not rebutted the presumption. Neither argument is persuasive.
 
 
 5
 With respect to the ALJ's invocation of the interim presumption, there are many ways in which a claimant may invoke the presumption. The claimant, however, needs to satisfy but one criterion to properly invoke the presumption. In determining whether Madden had properly invoked the presumption, the ALJ first considered whether ventilatory studies offered into evidence established the presence of chronic pulmonary disease pursuant to 20 C.F.R. Sec. 727.203(a)(2). He found that these studies easily established such a disease and held, therefore, that Madden had properly invoked the presumption.
 
 
 6
 That should have ended that part of the inquiry. But, apparently out of an abundance of caution, the ALJ continued to analyze other factors under Sec. 727.203(a) that authorize the invocation of the presumption. In his analysis under Sec. 727.203(a)(1), it is arguable that the ALJ used the "true doubt" rule as an evidentiary tie-breaker. This additional analysis under Sec. 727.203(a)(1), however, was superfluous because the ALJ had already determined that the presumption had been invoked. Accordingly, we need not parse out the ALJ's analysis to determine whether he relied upon the discredited "true doubt" rule; the ALJ properly held that Madden had invoked the interim presumption under Sec. 727.203(a)(2).
 
 
 7
 Once the presumption has been invoked, the burdens of production and persuasion shift to the employer to rebut the presumption. In this case, Lemmons conceded that it could not rebut the presumption under Secs. 727.203(b)(1) or (b)(2). It attempted then to rebut the presumption under Secs. 727.203(b)(3) and (b)(4). To succeed, Lemmons had to prove by a preponderance of the evidence that Madden's disability "(3) ... did not arise in whole or in part from coal mine employment; or (4) [Madden did] not have pneumoconiosis." Its burden was made that much more difficult when the ALJ ruled that Madden did not have a significant history of smoking. Smoking is the usual culprit causing the disability in instances in which the employer can rebut under subsection three. See, e.g., Amax Coal Co. v. Beasley, 957 F.2d 324, 327 (7th Cir.1992).
 
 
 8
 This is one of those black lung cases in which rebuttal of the interim presumption under Secs. 727.203(b)(3) and (b)(4) entail essentially the same question. This is due to Sec. 727.203(b)(4)'s reliance on the "statutory" rather than the "clinical" definition of pneumoconiosis. See Chastain v. Freeman United Coal Mining Co., 919 F.2d 485, 487 & n. 5 (7th Cir.1990) (citing Peabody Coal Co. v. Lowis, 708 F.2d 266, 268 n. 4 (7th Cir.1983)). The clinical definition is a medically narrow definition of the ailment used by doctors in a very technical manner. The statutory definition of pneumoconiosis, on the other hand, is quite broad. The regulation defines pneumonoconiosis as "any chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." Thus, if the employer concedes the existence of chronic pulmonary disease, the only question to be considered is whether its cause is coal mine employment.
 
 
 9
 The main evidence in this case came in the form of diagnoses and testimony from two well-respected medical experts, Doctors Houser and Tuteur.[2] Each examined all the medical evidence and arrived at opposite conclusions. While Dr. Tuteur admitted that Madden had suffered enough exposure to coal dust that he could have developed chronic lung disease as a result, he determined that Madden's chronic obstructive lung disease was not caused by Madden's coal employment, but by Madden's extensive smoking. Dr. Tuteur believed that Madden suffered from neither legal nor clinical pneumoconiosis.
 
 
 10
 Dr. Houser, conversely, stated that Madden indeed suffered from clinical pneumoconiosis; he based his diagnosis on his evaluation of Madden's chest x-rays which indicated the presence of "small p rounded opacities" on Madden's lungs. In addition, Dr. Houser espoused his view that coal dust can cause an obstructive lung disease (and cited several respected medical journals in support of his position) in instances in which a patient also suffers from clinical pneumoconiosis. He, therefore, concluded that Madden's obstructive lung disease was caused by his coal mine employment.
 
 
 11
 The ALJ was aware that we have previously acknowledged the ongoing disagreement in the medical community over whether obstructive lung disease can be caused by coal dust. See Freeman United Coal Co. v. OWCP, 957 F.2d 302, 303 (7th Cir.1992). He believed then that, because he had found that Madden had no significant history of smoking, Dr. Tuteur was less believable than Dr. Houser and that Madden suffered from pneumoconiosis. This seems an eminently rational determination. At the very least, the ALJ thought the two experts offset one another; that is, the evidentiary battle was a tie. Because Lemmons bore the burden of rebutting the interim presumption by a preponderance of the evidence, a tie does it no good. We conclude, therefore, that Lemmons failed to meet its burden of proving that Madden's chronic pulmonary lung disease was not caused by his coal mine employment.
 
 
 12
 In conclusion, we find that the ALJ properly invoked the interim presumption pursuant to Sec. 727.203(a)(2) and that Lemmons did not effectively rebut the presumption. The ALJ, therefore, correctly concluded that Madden was entitled to benefits. Accordingly, Lemmons' petition for review of the Board's decision is
 
 
 13
 DENIED.
 
 
 
 *
 The Hon. Thomas M. Reavley of the United States Court of Appeals for the Fifth Circuit is sitting by designation
 
 
 [1]
 Between the time of an initial determination of entitlement to benefits and the date of the hearing, Charles Madden and, after his death, Jewell Madden received interim benefits from the Black Lung Disability Trust Fund
 
 
 [2]
 We have previously noted the expertise of these two doctors. See Peabody Coal Co. v. Helms, 901 F.2d 571, 572 (7th Cir.1990)